UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:17-cv-01500-CAS(AS) | Date | May 1, 2017 |
|---|---|---|---|
| Title | ROBERT DAISLEY v. BLIZZARD MUSIC LIMITED (US) ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:   Attorneys Present for Defendants:

Colin Proksel   Peter Anderson

Alan Howard

**Proceedings:** DEFENDANTS' MOTION TO DISMISS OR STAY ACTION (Dkt. 41, filed March 8, 2017)

## I. INTRODUCTION

On August 8, 2016, plaintiff Robert Daisley filed this action in the District Court for the State of Nevada against defendants Blizzard Music Limited (US) ("Blizzard US") and John Michael "Ozzy" Osbourne. Dkt. 1, Ex. 1 ("Compl."). On August 31, 2016, defendants removed this case to federal court in Nevada. Dkt. 1. On February 22, 2017, the U.S. District Court for the District of Nevada granted defendants' motion to transfer this case to this district. Dkt. 26.

Plaintiff asserts three claims: (1) fraud against Blizzard US, (2) fraud against Osbourne, and (3) accounting against both defendants. Compl. ¶¶ 97–130. The gravamen of plaintiff's complaint is that defendants deprived plaintiff of his rightful compensation because Blizzard US improperly deducted 15 percent from its gross receipts before remitting payments to its parent company, Blizzard Music Limited (UK) ("Blizzard UK"), which distributes royalties to plaintiff.

On March 8, 2017, defendants filed a motion to dismiss or stay this action pending arbitration or, alternatively, to dismiss this action for failure to state a claim on which relief may be granted. Dkt. 41 ("Motion"). Plaintiff filed his opposition on March 27, 2017, dkt. 43 ("Opp'n"), and defendants filed their reply on April 10, 2017, dkt. 46 ("Reply").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:17-cv-01500-CAS(AS) | Date | May 1, 2017 |
| Title | ROBERT DAISLEY v. BLIZZARD MUSIC LIMITED (US) ET AL. | | |

## II. BACKGROUND

Plaintiff alleges the following facts.

Plaintiff is a musician and composer who co-authored songs on two albums—Blizzard of Ozz and Diary of a Madman—with Osborne, among others. Compl. ¶¶ 3, 19–31, 112. Plaintiff refers to the songs on these two albums collectively as the "Disputed Compositions." Id. ¶ 32.

Blizzard US is a Nevada corporation that is the wholly-owned subsidiary of Blizzard UK. Id. ¶ 11. Osbourne is the president, treasurer, director, and CEO of Blizzard US, and served as the lead vocalist on Blizzard of Ozz and Diary of a Madman. Id. ¶¶ 12, 85.

On July 1, 1980 and February 1, 1981, plaintiff assigned his author share of the copyrights for the Disputed Compositions to Blizzard UK. Id. ¶¶ 34, 36. Plaintiff refers to these assignment contracts as the "Songwriter Agreements." Id. ¶ 33.

Blizzard UK administers the copyrights for the Disputed Compositions and is responsible for the collection and distribution of royalties to plaintiff. Id. ¶ 39. The royalties are earned through various types of licenses and sales, which plaintiff refers to collectively as "Commercial Exploitations." Id.

Under each of the Songwriter Agreements for the Disputed Compositions, Blizzard UK is required to "pay or cause to be paid to the Composer/Author in respect of said work . . . 90 percent . . . of all gross royalties and other payments received by the Publisher in respect of sound recordings, piano rolls, and all other devices for audibly and visual reproducing the said work for sale or hire in the United Kingdom of Great Britain and northern Ireland." Id. ¶ 41. For income earned through Commercial Exploitations in the United States and other territories, Blizzard UK was required to pay plaintiff "90 percent . . . of all monies received in respect of the right to record the said work on sound tracks for use with cinematograph, television and other films, and to the right to use said work (whether prerecorded or not) in any television or other programme." Id. ¶ 42. On information and belief, plaintiff alleges that Osbourne relied on Blizzard US to serve as the publisher for the Disputed Compositions in the United States, including the Commercial Exploitation of the Disputed Compositions. Id. ¶ 43.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:17-cv-01500-CAS(AS) | Date | May 1, 2017 |
| Title | ROBERT DAISLEY v. BLIZZARD MUSIC LIMITED (US) ET AL. | | |

Since the execution of the Songwriter Agreements, Blizzard UK has provided royalty statements to plaintiff twice a year, which are required to represent accurately payments in accordance with the terms of the Songwriter Agreements, including (a) that Blizzard UK received 100 percent of the agreed-upon license fee; (b) the share to be allocated to the recipient for the specific Disputed Composition; and (c) the royalty rate applied. Id. ¶ 44.

In or around February 2014, plaintiff—concerned about his royalty statements and the amount of compensation received as a result of the Commercial Exploitation of the Disputed Compositions—attempted to conduct a comprehensive inspection of the books and records for the Disputed Compositions. Id. ¶¶ 55–57. The audit, conducted by Audit Time, LLC, revealed that Blizzard US improperly deducted 15 percent for the gross receipts on Commercial Exploitations negotiated by Blizzard US. Id. ¶ 63. As a result, only 85 percent of the gross receipts collected by Blizzard US were transferred to Blizzard UK. Id. ¶ 64. However, Blizzard UK represented to plaintiff that the 85 percent was "100 percent" of the gross receipts on the royalty statements and allegedly concealed from plaintiff the withholding of 15 percent of the royalties owed to him. Id. ¶ 65.

None of plaintiff's royalty statements disclosed this deduction of income and none of the Songwriter Agreements contained any rights for Blizzard US or Blizzard UK to undertake the extra deductions. Id. ¶¶ 66–67.

On October 2, 2014, plaintiff raised his concerns about fraudulent conduct with Blizzard UK's counsel, Sheridans. Id. ¶ 70. On October 16, 2014, Sheridans responded in relevant part that:

- Blizzard US accounts to Blizzard UK "in respect of publishing activities in relation to the Songs in the U.S. territory and receives a fee of 15% by way of remuneration for the services provided;"

- "[R]etaining a sub publisher on such commercial terms is standard within the music publish industry;"

- "[R]oyalty statements rendered to [plaintiff] may not have expressly stated the amount of overseas sub-publisher representations;"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:17-cv-01500-CAS(AS) | Date | May 1, 2017 |
| Title | ROBERT DAISLEY v. BLIZZARD MUSIC LIMITED (US) ET AL. | | |

Id. ¶ 73.  Before receiving the letter from Sheridans, plaintiff was not aware that Blizzard US withheld income from Blizzard UK from Commercial Exploitations of the Disputed Compositions in the United States as a resulted of a supposed sub-publishing agreement.  Id. ¶ 81.  Plaintiff has never been provided a copy of any sub-publisher agreement between Blizzard UK and Blizzard US.  Id. ¶ 75.  On information and belief, plaintiff alleges that Osbourne directed Blizzard UK and Blizzard US to reject all of plaintiff and Audit Time's requests for individual contracts and additional information regarding the sub-publishing arrangement between Blizzard UK and Blizzard US.  Id. ¶ 79.  On information and belief, plaintiff alleges that "standard" sub-publishing agreements require the sub-publishers to account to the publisher, and by extension the authors, and provide copies of all business conducted by the sub-publisher.  Id. ¶ 77.  On information and belief, plaintiff contends that Blizzard UK and Blizzard US do not have a "standard" sub-publishing arrangement.  Id. ¶ 78.

Plaintiff alleges that Blizzard US and Blizzard UK only perform publishing and sub-publishing functions for the Disputed Compositions and compositions involving Osbourne and his family.  Id. ¶¶ 88–90.  Upon information and belief, Blizzard US and Blizzard UK share employees and Osbourne does not maintain corporate formalities in his operation of Blizzard US.  Id. ¶¶ 91–92.  Upon information and belief, the accounting records for Blizzard US show irregularities, indicating that Blizzard US is not adequately capitalized.  Id. ¶¶ 93–94.  Plaintiff alleges that Blizzard US and Blizzard UK are alter egos of Osbourne because "both companies exist for the sole purpose of exploiting the Disputed Compositions to the detriment of his co-authors."  Id. ¶ 95.  Because of his domination and control of Blizzard US and Blizzard UK, plaintiff contends that Osbourne is individually liable for the fraudulent activities undertaken by Blizzard US. Id. ¶ 96.

Plaintiff asserts a claim of fraud against Blizzard US because: (a) "Blizzard US misrepresented the total amount of income received from Commercial Exploitation of the Disputed Compositions in the United States"; (b) "Blizzard US withheld money in the United States that it knew should have been transferred to Blizzard UK and distributed to Plaintiff"; and (c) "[b]ased on these misrepresentations, royalty statements provided by Blizzard UK to Plaintiff reflected an inaccurate percentage of income received."  Id. ¶¶ 100–02.  Plaintiff asserts his fraud claim against Osbourne on the basis of alter ego liability.  Id. ¶¶ 111–23.  Finally, plaintiff requests an accounting of Blizzard US, Blizzard UK, and Osbourne in order to assess the precise amount of income owed to plaintiff.  Id. ¶ 130.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:17-cv-01500-CAS(AS) | Date | May 1, 2017 |
| Title | ROBERT DAISLEY v. BLIZZARD MUSIC LIMITED (US) ET AL. | | |

## III. LEGAL STANDARDS

Defendants seek the dismissal or stay of this action pending arbitration pursuant to Federal Rules of Civil Procedure 12(b)(1), (3), and (6), and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq. Substantial case law establishes that these are the correct rules under which to seek dismissal based on an arbitration provision. See, e.g., Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004) (affirming dismissal of plaintiffs' claims subject to arbitration provision pursuant to Rule 12(b)(6)); Chappel v. Lab. Corp. of Am., 232 F.3d 719, 725 (9th Cir. 2000) (same); Cancer Ctr. Assocs. for Research & Excellence, Inc. v. Philadelphia Ins. Companies, No. 1:15-cv-00084-LJO, 2015 WL 1766938, at *2 (E.D. Cal. Apr. 17, 2015) ("[C]ourts have held that a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is a procedurally sufficient mechanism to enforce [an] [a]rbitration [p]rovision." (quotation marks omitted)); Minnesota Supply Co. v. Mitsubishi Caterpillar Forklift Am. Inc., 822 F. Supp. 2d 896, 905 n.10 (D. Minn. 2011) (noting that a dismissal based on a binding arbitration agreement is proper pursuant to Rule 12(b)(3) and Rule 12(b)(6)); Luna v. Kemira Specialty, Inc., 575 F. Supp. 2d 1166, 1176 (C.D. Cal. 2008) ("[E]ven where a party moves to stay litigation pending arbitration under the Federal Arbitration Act, 9 U.S.C. § 3, the district court has discretion to dismiss the complaint if it finds all of the claims before it are arbitrable.").

### A.     Rule 12(b)(1)

A motion pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). Such a motion may be "facial" or "factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). That is, a party mounting a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); Thornhill Publishing co. v. General Tel. & Electronics, 594 F.2d 730, 733 (9th Cir. 1979).

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778–79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A. Wright &

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:17-cv-01500-CAS(AS) | Date | May 1, 2017 |
| Title | ROBERT DAISLEY v. BLIZZARD MUSIC LIMITED (US) ET AL. | | |

Arthur R. Miller, Federal Practice and Procedure, § 1350, pp. 211, 231 (3d ed. 2004). If jurisdiction is based on diversity of citizenship, the pleader must show real and complete diversity, and also that his asserted claim exceeds the requisite jurisdictional amount of $75,000. See id. When deciding a Rule 12(b)(1) motion, the court construes all factual disputes in favor of the non-moving party. See Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

### B. Rule 12(b)(3)

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a complaint for improper venue. Generally, courts look to the venue provisions set forth in 28 U.S.C. § 1391 to determine whether venue is proper. However, a defendant may move to dismiss pursuant to Rule 12(b)(3) based on a forum selection clause, even if venue would otherwise be proper under 28 U.S.C. § 1391. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). When considering a motion to dismiss under Rule 12(b)(3), a court need not accept the pleadings as true and may consider facts outside of the pleadings. Id. Once the defendant has challenged a given court's jurisdiction for improper venue, the plaintiff bears the burden of showing that venue is proper. Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979). If the court determines that venue is improper, the court must dismiss the action or, if it is in the interests of justice, transfer the action to a district or division in which the action could have been brought. 28 U.S.C. § 1406(a). Whether to dismiss for improper venue or transfer venue to a proper court is within the sound discretion of the district court. See King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992).

### C. Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:17-cv-01500-CAS(AS) | Date | May 1, 2017 |
| Title | ROBERT DAISLEY v. BLIZZARD MUSIC LIMITED (US) ET AL. | | |

of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

Federal Rule of Civil Procedure 8(a) provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:17-cv-01500-CAS(AS) | Date | May 1, 2017 |
| Title | ROBERT DAISLEY v. BLIZZARD MUSIC LIMITED (US) ET AL. | | |

entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to meet this standard, a claim for relief must be stated with "brevity, conciseness, and clarity." See Charles A. Wright & Arthur R. Miller, 5 Federal Practice and Procedure § 1215 (3d ed.). "The Plaintiff must allege with at least some degree of particularity overt acts which Defendants engaged in that support the Plaintiff's claim." Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996).

### D.     The Federal Arbitration Act

The FAA provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitrations agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quotation marks omitted).

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626 (1985). The court must determine (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000). When determining whether a valid and enforceable contract to arbitrate has been established for the purposes of the FAA, federal courts should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Circuit City Stores v. Adams, 279 F.3d 889, 892 (2002). "[A]greements to arbitrate [may] be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent–A–Center, W., Inc. v. Jackson, 561 U.S. 63, 68–69 (2010). However, "the question of arbitrability, is an issue for judicial determination [u]nless the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:17-cv-01500-CAS(AS) | Date | May 1, 2017 |
| Title | ROBERT DAISLEY v. BLIZZARD MUSIC LIMITED (US) ET AL. | | |

parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quotation marks omitted).

## IV. DISCUSSION

### A. Whether the Arbitration Agreement is Valid and Enforceable

Plaintiff concedes that he executed the Songwriter Agreements and that each one of the Disputed Compositions is subject to a Songwriter Agreement. Compl. ¶ 33. The Songwriter Agreements contain the following provision:

> IF any dispute or difference shall arise between the parties hereto on any matter touching this Agreement or any of the terms hereof the same and all matters arising therefrom shall be referred to a single Arbitrator to be agreed between the parties or in the case of failure to agree to be appointed by the President for the time being of the Law Society and the decision of such Arbitrator shall be final and binding on the parties hereto.

Dkt. 41-9, Declaration of Peter J. Anderson Ex. 7 at 107 ("Songwriter Agreement") ¶ 18. During plaintiff's 1998 lawsuit against Blizzard UK and Osbourne, this Court concluded that plaintiff is bound by the Songwriter Agreements' arbitration provision. See Daisley v. Osbourne, No. 2:98-cv-6954-CAS-SH, dkt. 110 at 12 (C.D. Cal. June 4, 2002). Thus, the doctrine of collateral estoppel prevents the relitigation of this issue. See Five Star Capital Corp. v. Ruby, 124 Nev. 1048, 1055, 194 P.3d 709, 713 (2008) (under Nevada law, issue preclusion applies where, as here: "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; . . . (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation"; and (4) the issue was actually and necessarily litigated." (citation and quotation marks omitted)).[1] Notably, however, plaintiff does not dispute that the

---

[1] The Court applies Nevada law to state law issues because the case was transferred to this district pursuant to 28 U.S.C. § 1404(a). See Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) ("[W]here the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under s 1404(a) generally should be, with respect to state law, but a change of courtrooms."); Hooper v. Lockheed Martin Corp., 688 F.3d 1037,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:17-cv-01500-CAS(AS) | Date | May 1, 2017 |
| Title | ROBERT DAISLEY v. BLIZZARD MUSIC LIMITED (US) ET AL. | | |

arbitration provision of the Songwriter Agreements are valid and enforceable. Rather, plaintiff argues that the arbitration provision does not apply to this dispute. Opp'n at 9.

### B. Whether Plaintiff's Claims are Subject to Arbitration

Defendants argue that plaintiff's claims are subject to arbitration because they arise out of rights and duties set forth in the Songwriter Agreements. Motion at 11–12. According to defendants, they can invoke plaintiff's obligation to arbitrate for three reasons: (1) plaintiff cannot avoid an arbitration agreement where he relies on the contract as a basis for relief; (2) subsidiaries and officers of a corporate party to an arbitration agreement can raise the duty to arbitrate claims that are within the arbitration clause; and (3) non-signatory alleged alter egos may compel arbitration under clauses signed by the corporations whose liabilities they are alleged to assume. Motion at 12–14.

Plaintiff disputes that his claims are based on the Songwriter Agreements because Blizzard US is not a party to those agreements. Opp'n at 10. Plaintiff further argues that defendants should be estopped from arguing that Blizzard US's withholding of income falls within the scope of the Songwriter Agreements because, according to plaintiff, defendants have previously represented that Blizzard US is distinct entity with separate books and records that plaintiff could not access under the Songwriter Agreements. Id. at 11–12. At oral argument on May 1, 2017, plaintiff's counsel argued that the arbitration agreement is not enforceable because it applies only to "any dispute or difference [that] arise[s] *between the parties hereto*[.]" Because Osbourne and Blizzard US are not parties to the Songwriter Agreements, plaintiff's counsel asserted that the arbitration provision does not apply to defendants.

The Court finds defendants' arguments persuasive. First, the Court finds that plaintiff's claims arise from "any matter touching" the Songwriter Agreements or "any of [its] terms" and "arising therefrom[.]" See Songwriter Agreement ¶ 18. Plaintiff would not be entitled to *any* income from Blizzard US absent the Songwriter Agreement with Blizzard UK, which entitled plaintiff to 90 percent of the monies that Blizzard UK received from Commercial Exploitations of the Disputed Compositions in the United States. See Compl. ¶ 42. "Keeping in mind that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,'" the Court concludes that

---

1045, 1046 (9th Cir. 2012) (concluding that Van Dusen applies to cases arising under federal question jurisdiction where there are "embedded state law issues").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:17-cv-01500-CAS(AS) | Date | May 1, 2017 |
| Title | ROBERT DAISLEY v. BLIZZARD MUSIC LIMITED (US) ET AL. | | |

plaintiff's fraud claim, along with his derivative alter ego and accounting claims touch and arise from the Songwriter Agreements. See Ferguson v. Corinthian Colleges, Inc., 733 F.3d 928, 938 (9th Cir. 2013) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983)). That plaintiff expressly requests an accounting *of non-party Blizzard UK*, along with defendants Blizzard US and Osbourne, see Compl. ¶ 130, further underscores that plaintiff's claims arise out of the Songwriter Agreements entered into with Blizzard UK.

Second, the Court finds that defendants can invoke the arbitration provision of the Songwriter Agreements because plaintiff has alleged that Blizzard US and Blizzard UK are alter egos of Osbourne. See Compl. ¶ 95. The Supreme Court has recognized that "traditional principles of state law, allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, *alter ego*, incorporation by reference, third-party beneficiary theories, waiver and estoppel[.]" Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009) (emphasis added, quotation marks omitted). The Supreme Court reached that conclusion when considering whether a nonparty could enforce an arbitration agreement. Id. at 629–32. That defendants contest the existence of alter ego liability does not mean that the Arthur Andersen principle does not apply. For example, in Formostar LLC v. Florentius, No. 2:11-cv-01166-GMN-CW, 2012 WL 2873928 (D. Nev. July 13, 2012), even after the court concluded that the magistrate judge's finding of alter ego liability was "clearly erroneous[,]" the court went on to conclude:

> this does not change the ultimate finding that this Court can compel all parties in this matter to arbitrate the dispute. "Nonsignatory . . . alleged alter egos are entitled to compel arbitration under clauses signed by the corporations whose liabilities they are alleged to have assumed." Plaintiffs allege that Florentius is the alter ego of Solipax. Furthermore, . . . since Florentius, as sole owner, president and manager of Solipax, was the agent of the company that the arbitration provision intended to cover, he has standing to compel arbitration.

See Formostar LLC v. Florentius, No. 2:11-cv-01166-GMN-CW, 2012 WL 2873928, at *2–3 (D. Nev. July 13, 2012) (quoting Prograph Intern., Inc. v. Barhydt, 928 F. Supp. 983, 991 (N.D. Cal. 1996)) (citation omitted). Therefore, the Court finds that plaintiff's alter ego allegations alone are sufficient to allow defendants to invoke the arbitration provision of the Songwriter Agreements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:17-cv-01500-CAS(AS) | Date | May 1, 2017 |
| Title | ROBERT DAISLEY v. BLIZZARD MUSIC LIMITED (US) ET AL. | | |

Third, the Court finds that plaintiff does allege a "dispute or difference . . . between the parties" to the Songwriter Agreements because the complaint is replete with allegations as against Blizzard UK. For example, plaintiff alleges that "Blizzard UK deducted an extra 15% from gross receipts on Commercial Exploitations negotiated by Blizzard US." Compl. ¶ 63. Plaintiff avers that "Blizzard UK nonetheless represented to Plaintiff that 85% was '100%' of the gross receipts on the royalty statements . . . and concealed from Plaintiff the fact that Defendants had withheld from Plaintiff an additional 15% of the royalties otherwise owed to him." Id. ¶ 65. And plaintiff seeks an accounting of Blizzard UK. Id. ¶ 130.

Accordingly, the Court concludes that plaintiff's claims are subject to arbitration.

### C. Whether the Court should Dismiss or Stay the Action

The Court finds that dismissal, rather than a stay, is the appropriate remedy in this case. The Ninth Circuit has held that where, as here, all the claims in the dispute are subject to arbitration, dismissal is the appropriate remedy. See, e.g., Thinket Ink, 368 F.3d at 1060 (holding that district court did not err "in dismissing the plaintiffs' claims that were subject to arbitration pursuant to Fed. R. Civ. P. 12(b)(6)"); Chappel, 232 F.3d at 725 (where "judicial review . . . is barred by the [contract's] valid and enforceable arbitration clause[,][t]he district court properly dismissed [plaintiff's] complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim"). Indeed, district courts in the Ninth Circuit routinely dismiss when all claims are subject to arbitration. See, e.g., Lewis v. UBS Fin. Servs. Inc., 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011); KKE Architects, Inc. v. Diamond Ridge Dev. LLC, No. 07-cv-06866-MMM, 2008 WL 637603, *3–7 (C.D. Cal. Mar. 3, 2008).

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendants' motion to dismiss plaintiff's complaint. The action is dismissed without prejudice to plaintiff's right to reassert his claims in arbitration.

IT IS SO ORDERED.

|  | 00 | : | 11 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |